IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| SHELBY COUNTY ADVOCATES FOR VALID ELECTIONS, MICHAEL KERNELL, JOE TOWNS, JR., ANN SCOTT, and SUHKARA A. YAHWEH, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 2:18-cv-02706-TLP-dkv |
| v. | ) ) | JURY DEMAND |
| TRE HARGETT, in his official capacity as TENNESSEE SECRETARY OF STATE, et al., | ) ) ) ) ) | |
| Defendants. | ) | |

**ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER**

As Tennesseans make final preparations to cast their ballots, Plaintiffs move for a Temporary Restraining Order ("TRO") and Mandamus requiring state and local election officials to take last-minute affirmative steps to implement procedures Plaintiffs believe will make the election more secure and trustworthy. (ECF No. 23.) The day after Plaintiffs filed the motion for TRO, this Court held a hearing. (ECF No. 42.) Because Plaintiffs failed to meet their burden of proof, at the end of the hearing, the Court issued a brief oral ruling denying the Motion. The Court now issues this written opinion explaining its reasons for DENYING Plaintiffs' Motion for Temporary Restraining Order and Mandamus.

## BACKGROUND

Plaintiffs filed this suit on Friday, October 12, 2018, five days before early voting began in Shelby County, Tennessee for the November 2018 elections. (ECF No. 1.) The

Complaint brings "a civil rights action for declaratory and injunctive relief" against the State of Tennessee, Shelby County and various individuals responsible for conducting elections. (*Id.*) Plaintiffs claim that the Defendants' use of certain voting devices—and the lack of security and accountability associated with those devices—violates Plaintiffs' constitutional right to vote. (ECF No. 1 at PageID 2.) In particular, the Complaint alleges that Shelby County Election Commission's ("Shelby County") use of AccuVote-TSx R7 direct-recording electronic voting machines ("AccuVote DRE") and Diebold GEMS version 1.18.24.101 voting software does not meet Tennessee statutory requirements and thus creates an inherently insecure and inaccurate voting system. (*Id*. at PageID 48–49.)

In essence, Plaintiffs' main dispute with Shelby County's voting system is that it does not create a voter verified paper audit trail ("VVPAT"). (*Id*. at PageID 2.) The AccuVote DRE does not record each voter's selection on a paper ballot. Instead, each voter verifies their choices on the screen (much like using a banking ATM machine) before submitting their ballot electronically and their votes are stored on removable memory card and on the voting machine's internal flash memory. (ECF No. 1 at PageID 22.) The election officials later upload the information from the memory card to a server that tabulates the votes. (*Id.*) Allegedly, the lack of a VVPAT has caused—and will continue to cause— "Plaintiffs and Shelby County voters to cast votes on an illegal and unreliable system that must be presumed to be compromised and that is incapable of producing verifiable results." (*Id*. at PageID 49.)

Plaintiffs also assert that Defendants are aware of the deficiencies in Shelby County's voting system and that Defendants have violated the Fourteenth Amendment to the United States Constitution by continuing to use this voting system. (*Id.*) In fact, Plaintiffs allege that Shelby County created a fundamentally unfair voting system in violation of the Due Process

2

Clause of the Fourteenth Amendment. (ECF No. 1 at PageID 52.) And Plaintiffs allege that Defendants knowingly treated Plaintiffs and other Shelby County voters differently than similarly situated voters in other Tennessee counties in violation of the Equal Protection Clause of the Fourteenth Amendment. (*Id*.) Finally, Plaintiffs allege that Shelby County's voting system violates Tennessee statutory law and the Tennessee Constitution. (*Id*. at PageID 59–60.)

The Monday after filing suit, Plaintiffs then moved for a temporary restraining order and mandamus order requesting an order requiring the election officials take various affirmative measures related to the voting system before early voting began on October 17, 2018. (ECF No. 23.) The Court held a hearing on this matter on October 16, 2018. Representatives for all parties appeared at this hearing.

## **STANDARD OF REVIEW**

A TRO "is an extraordinary remedy designed for the limited purpose of preserving the status quo pending further proceedings on the merits . . . ." *Stein v. Thomas*, 672 F. App'x 565, 572 (6th Cir. 2016) (McKeague, J. dissenting) (stating that the district court overreached and disrupted the status quo by ordering Michigan officials to recount votes before required to under state law). Because they are extraordinary remedies, TRO's are only granted where the movant carries his burden of proving that the circumstances clearly demand it. *Leary v. Daeschner,* 228 F.3d 729, 739 (6th Cir.2000); *accord National Viatical, Inc. v. Universal Settlements Int'l, Inc.,* No. 1:11–cv–1226, 2012 3779298, at \*2 (W.D. Mich. Aug. 31, 2012). As with the requested TRO here, a TRO tantamount to a mandatory injunction requires a higher—yet undefined—burden to issue than required of an order merely preserving the status quo. *See Hill v. Snyder*, No. 16-2003, 2016 WL 4046827, at \*2 (6th Cir. July 20, 2016)

3

(holding that the circuit court had jurisdiction to determine on interlocutory appeal whether to stay a TRO that acted as a mandatory injunction requiring affirmative action instead of simply preserving the status quo); *Ne. Ohio Coalition for Homeless & Serv. Emps. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1006 (6th Cir. 2006)) ("When a TRO does not 'merely preserve the status quo pending further proceedings,' but rather 'directs action so potent with consequences so irretrievable, we provide an immediate appeal to protect the rights of the parties.'").

Rule 65 of the Federal Rules of Civil Procedure governs motions for TROs and injunctions. A motion for a TRO must include "(A) specific facts in an affidavit or a verified complaint clearly show[ing] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be hear in opposition; and (B) the movant's attorney [must] certif[y] in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(A)–(B). The Court looks at these factors in determining whether to issue a TRO:

(1) whether the movant has a strong likelihood of success on the merits;

(2) whether the movant would suffer irreparable injury absent a stay;

(3) whether granting the stay would cause substantial harm to others; and

(4) whether the public interest would be served by granting the stay.

*Stein v. Thomas*, 672 F. App'x at 569 (quoting *Ne. Ohio Coalition for Homeless & Serv. Emps. Int'l Union, Local 1199*, 467 F.3d at 1009).

The factors from Rule 65 "are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Id*. (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog,* 945 F.2d 150, 153 (6th Cir. 1991)). "For example, the

4

probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury the movants will suffer absent the stay." *Blackwell*, 467 F.3d at 1009.

The burden of persuasion is on the party seeking injunctive relief. *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978). "At the preliminary injunction stage, 'a plaintiff must show more than a mere possibility of success,' but need not "prove his case in full." *Ne. Ohio Coal. for the Homeless v. Husted*, 696 F.3d 580, 591 (6th Cir. 2012) (quoting *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 543 (6th Cir. 2007)).

Plaintiffs here have not met their burden of proof.

## **ANALYSIS**

The Complaint reflects Plaintiffs' distrust of the current voting system and their desire to move to an allegedly safer and more verifiable system. Plaintiffs have moved for a TRO and Mandamus Order requesting, among other things, an order requiring that Defendants request the United States Department of Homeland Security to perform a cyber-security threat assessment on the local voting system, install advanced threat monitoring sensors in all local voter registration environments, allow an expert or special master to review local voting systems, and conduct criminal background checks on any person who has access to Shelby County's voting system. (ECF No. 23 at PageID 220–24.) The Plaintiffs moved the Court to order these actions take place before October 17, 2018, when early voting began. (*Id.*) For the reasons that follow, the Court will not issue a TRO.

### I.     Strong Likelihood of Success on the Merits

The Court should first determine if there is a strong likelihood that Plaintiffs' claims will prevail. *See Stein*, 672 F. App'x at 569. Plaintiffs claim that Shelby County's voting

5

system violates: (1) the Due Process Clause of the Fourteenth Amendment; (2) the Equal Protection Clause of the Fourteenth Amendment; and (3) Tennessee constitutional and statutory law. The Court will address each claim in turn.

### A. Fundamental Right to Vote

Plaintiffs' claims relate to a precious, fundamental right in this nation. "The right to vote is a fundamental right, 'preservative of all rights.'" *League of Women Voters v. Brunner,* 548 F.3d 463, 476 (6th Cir. 2008) (quoting *Yick Wo v. Hopkins,* 118 U.S. 356, 370 (1886)). That being so, "the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights, any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized." *Warf v. Bd. of Elections of Green Cty., Ky.*, 619 F.3d 553, 559 (6th Cir. 2010) (quoting *Reynolds v. Sims*, 377 U.S. 533, 562 (1964)). The states play an important role in regulating this right because the constitution vests the states with the authority to regulate "[t]he Times, Places and Manner of holding Elections for Senators and Representatives." *Ne. Ohio Coal. for the Homeless v. Husted*, 696 F.3d at 592. (quoting U.S. Const. Art. I, § 4, cl. 1). What is more, it also "leaves the conduct of state elections to the states . . . and the principles of federalism, therefore, limit the power of federal courts to intervene in state elections." *Warf*, 619 F.3d at 559. (quoting *Shannon v. Jacobwitz*, 394 F.3d 94 (2d Cir. 2005)). "'Common sense, as well as constitutional law, compels the conclusion that [there] … must be substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process." *Id*. (quoting Burdick v. Takushi 504 U.S. 428, 433 (1992). Courts have, therefore, "long recognized that . . . only in extraordinary circumstances" will the burden on the right to

vote outweigh the states' authority to regulate. *Warf*, 619 F.3d at 559. (quoting *Burton v. Georgia*, 953 F.2d 1266, 1268 (11th Cir. 1992)).

With these principles in mind, the Court addresses to the likelihood of success of Plaintiffs' claims.

### B. Due Process Claim

Plaintiffs first claim that by requiring voters to use Shelby County's voting system, the Defendants have denied Plaintiffs' fundamental right to vote in contravention of the Due Process Clause. (ECF No. 1 at PageID 52.) Plaintiffs argue that the right to vote means "the right to participate in a trustworthy and verifiable election process that safely, accurately, and reliably records and counts all votes cast and produces a reliable election result capable of being verified as true in a recount or election contest." (*Id*.) Shelby County allegedly violated this right because the voting system in place suffers from non-uniform standards, processes, and rules that create an unreliable means of voting. (*Id*.) Plaintiffs state that the current voting system is susceptible to hacking or physical manipulation (ECF No. 1-5 at PageID 88–89), it increases the possibility that a voter could receive the wrong ballot (*Id*. at PageID 93), it allows the election commission to manipulate vote totals (ECF No. 1-6), and, in at least one instance, it has malfunctioned causing on-screen selection of one candidate to register as a selection of another candidate (ECF No. 1-10). These issues combine to allegedly result in an unfair voting system incapable of producing verifiable results. (ECF No. 1 at PageID 49.)

Plaintiffs also argue that this constitutional violation could be remedied by implementing more security features and using a voting system that creates a verifiable paper trail. In particular, Plaintiffs state that the local election officials should replace the

7

AccuVote DRE machines and GEMS software with hand marked, paper ballots for use with an optical scan device. (ECF No. 1 at PageID 54–56.)

Although the law recognizes that voters' rights can be impaired any number of ways, to be actionable under due process, the system must be fundamentally unfair. "[T]he right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (quoting *Reynolds v. Sims,* 377 U.S. 533, 555 (1964)). "An actionable due process claim may also be implicated where a state's election process impaired citizens' ability to participate in state elections on an equal basis with other qualified voters." *George v. Hargett*, 879 F.3d 711, 726–28 (6th Cir. 2018), *cert. denied*, No. 18-76, 2018 WL 3428967 (U.S. Oct. 1, 2018) (citing *Phillips v. Snyder*, 836 F.3d 707, 716 (6th Cir. 2016)). Yet, the law only recognizes such a due process claim "in the exceptional case where a state's voting system is fundamentally unfair." *Brunner*, 548 F.3d at 478.

Such a system could be found "where the entire election process including as part thereof the state's administrative and judicial corrective process fails on its face to afford fundamental fairness." *Warf,* 619 F.3d at 559 (quoting *Griffin v. Burns*, 570 F.2d 1065, 1078 (1st Cir. 1978)). Or where a state employs "'non-uniform rules, standards and procedures,' that result in significant disenfranchisement and vote dilution . . . ." *Id*. (quoting *Brunner*, 548 F.3d at 478). "Federal courts, however, 'have uniformly declined to endorse action[s] under [§ ] 1983 with respect to garden variety election irregularities.'" *Id*. (quoting *Griffin*, 570 F.2d at 1076).

Plaintiffs here have not shown that Shelby County's voting system is fundamentally unfair. Plaintiffs raise several hypothetical or possible issues with the voting system by

8

pointing to anecdotal evidence of human and mechanical error throughout their complaint. But they have no convincing evidence verifying their claims of disenfranchisement as a result of the voting system in place. Instead, they argue that, without paper verification for every vote, it is possible that the votes are not be accurately recorded or cast at all. Plaintiffs have asserted no more than allegations of "garden variety election irregularities" that could conceivably occur with any type of voting system.

The federal courts should not quickly "become entangled, as overseers and micromanagers, in the minutiae of state election processes." *See Ohio Democratic Party v. Husted*, 834 F.3d 620, 622 (6th Cir. 2016). The Constitution gives great deference to the states to determine how votes are cast. This Court will not interfere with Shelby County's decision to use the AccuVote DRE without evidence that the County's deployment of these devices resulted in significant disenfranchisement or were otherwise fundamentally unfair.

This decision is supported by the Ninth Circuit's holding in *Weber v. Shelley*, where the court determined that a California county's use of a touchscreen voting system that lacked a VVPAT—like the one here—did not violate a voter's rights to due process and equal protection because the plaintiff "raised at most hypothetical concern[s] about the ability to audit and verify election results, and that the impact on her right to vote [was] minimal." 347 F.3d 1101, 1102–03 (9th Cir. 2003). California required all voting systems to be tested and approved under both state and federal guidelines. *Id*. at 1103. The plaintiff's county used a touchscreen DRE voting system that produced no paper trial. *Id*. at 1104. She complained that election officials violated her constitutional rights because the system was too easily manipulated and that the officials would not be able to discover that manipulation. *Id*. at

1104–05. In finding that the paperless, touchscreen voting system did not violate the plaintiff's constitutional rights, the Ninth Circuit stated:

> No balloting system is perfect. Traditional paper ballots, as became evident during the 2000 presidential election, are prone to overvotes, undervotes, "hanging chads," and other mechanical and human errors that may thwart voter intent. *See generally Bush v. Gore,* 531 U.S. 98 (2000). Meanwhile, touchscreen voting systems remedy a number of these problems, albeit at the hypothetical price of vulnerability to programming "worms" . . . . The unfortunate reality is that the possibility of electoral fraud can never be *completely* eliminated, no matter which type of ballot is used. *Cf. Hennings v. Grafton,* 523 F.2d 861, 864 (7th Cir. 1975) ("Voting device malfunction [and] the failure of election officials to take statutorily prescribed steps to diminish what was at most a theoretical possibility that the devices might be tampered with . . . fall far short of constitutional infractions . . . .") . . . . However, it is the job of democratically-elected representatives to weigh the pros and cons of various balloting systems. So long as their choice is reasonable and neutral, it is free from judicial second-guessing. In this instance, California made a reasonable, politically neutral and non-discriminatory choice to certify touchscreen systems as an alternative to paper ballots . . . . Nothing in the Constitution forbids this choice.

*Id.* at 1106–07.

The Court finds the Ninth Circuit's decision in *Weber* persuasive. Here, Shelby County officials have determined that it is in the best interest of the voters to use AccuVote DRE machines in these elections. The Court understands that many of Plaintiffs' concerns fit with reports in the media about computer hacking and foreign interference with the election process in the United States. And the Court agrees that a paper verification might be more reliable than the current voting system. All of that may be true, but Plaintiffs' allegations in this lawsuit are no more than hypothetical concerns about possible wrongdoing or device malfunction. They have not established that Shelby County voters cannot vote and have their votes counted on an equal basis with other voters in Tennessee.

During the hearing, Plaintiffs conceded that every voting system in this nation is susceptible to inaccuracies or malicious interference. Indeed, the measures Plaintiffs request

10

here do not guarantee the voting system in Shelby County will be secure or reliable. By contrast, however, if the Court were to grant the TRO here, it definitely would cause a mad scramble for the state and local election officials to alter their operations on the eve of early voting. Such an outcome would render the voting system less secure and reliable. While the constitution does not provide a clear measure of the level of accuracy or security required to pass constitutional muster, "*every* electoral law and regulation necessarily has *some* impact on the right to vote" and courts cannot strike down every electoral regulation that has a minor impact on that right without severely impacting the states' ability to conduct fair and orderly elections. *Weber*, 347 F.3d at 1106. It stands to reason, therefore, that "human error [will always] remain[] a part of the democratic process, and no constitutional rule is going to change that fact." *Stewart v. Blackwell*, 444 F.3d 843, 895–96 (6th Cir. 2006) (Gilman, J. dissenting), *vacated as moot*, 473 F.3d 692 (6th Cir. 2007). The Court finds that the Plaintiffs have not established that Shelby County's system is fundamentally unfair. Thus, Plaintiffs have failed to bear their burden of establishing a strong likelihood of success on the merits of their due process claim.

### C. Equal Protection Claim

Plaintiff's next allege that Shelby County's use of a paperless voting system violates the Equal Protection Clause of the Fourteenth Amendment by knowingly treating Shelby County voters differently than other similarly situated voters in Tennessee that do not use the same voting systems. (ECF No. 1 at PageID 57.) And Plaintiffs allege that because Shelby County has a disproportionately large number of African-American voters compared to other Tennessee counties, this voting system disproportionately impacts and disenfranchises African-Americans in Tennessee. (*Id.*) Plaintiffs complain that no other county in Tennessee

has to use this particular voting system and that counties with a smaller minority population have better voting systems, including fourteen counties that have VVPAT. (*Id*. at PageID 47); (*see also* ECF No. 1-2 at PageID 177.) Of note, in Tennessee, there are about eighty-one counties—including Shelby County—which do not have any form of VVPAT.

"[A]ll who participate in the election are to have an equal vote—whatever their race, whatever their sex, whatever their occupation, whatever their income, and wherever their home may be." *George v. Hargett*, 879 F.3d 711, 728 (6th Cir. 2018) (quoting *Reynolds v. Sims*, 377 U.S. 533, 557–58 (1964)). The Constitution does not allow the government to classify people in a way that "unnecessarily abridges this right [to vote]." *Id*. (alteration in original).

At the same time, voters do not have an absolute right to vote in any way they choose. *Ohio Democratic Party*, 834 F.3d at 626 (quoting *Burdick v. Takushi*, 504 U.S. 428, 433 (1992)). Substantial regulation is necessary to conduct fair and honest elections, and federal law generally gives deference to a state's decision to regulate the right to vote in a certain manner. *Id*. This includes regulating how votes are cast. The Equal Protection Clause is implicated only when the manner of voting results in a disparate classification of voters or burdens the exercise of the right to vote. *Obama for America v. Husted*, 697 F.3d 423, 428 (6th Cir. 2012)

Courts analyze equal protection challenges to voting regulations under the *Anderson-Burdick* framework. *Ohio Democratic Party*, 834 F.3d at 626 (citing *Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Burdick v. Takushi*, 504 U.S. 428 (1992)). The *Burdick-Anderson* test requires courts to weigh the burden imposed on Plaintiffs' constitutional right to vote against the state and county's interest in using the current voting system. *See Ne. Ohio Coal. for the*

*Homeless*, 696 F.3d at 592. "[W]hen a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the . . . Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify the restrictions." *Id*. (quoting *Burdick*, 504 U.S. at 434). Courts "calibrate the equal protection standard to 'the precise character of the state's action and the nature of the burden on voters.'" *Id*. (quoting *Obama for America*, 697 F.3d at 428).

"Under *Burdick*, the use of touchscreen voting systems is not subject to strict scrutiny simply because this particular balloting system may make the possibility of some kinds of fraud more difficult to detect." *Weber*, 347 F.3d at 1106 (9th Cir. 2003). The real question is whether the lack of a VVPAT "constitutes a 'severe' restriction on the right to vote." *Id*. This Court finds that Shelby County's use of the AccuVote DRE and accompanying software does not severely restrict the right to vote. No one is being turned away from the polls and there is no evidence that votes are not being counted. As a result, a rational basis standard applies.

Weighing the Plaintiffs' asserted injury from using a paperless voting system against Defendants' interest in using their chosen voting system, the Court finds that any burden on Plaintiffs' equal protection rights is not so severe that this Court should interfere with the County's decision to use AccuVote DRE machines. Only fourteen counties—out of ninety-five—use the paper ballot methods Plaintiffs advocate. (ECF No. 1-2 at PageID 177.) Shelby County is therefore in the majority of Tennessee counties using voting systems other than those equipped with a VVPAT. Plaintiffs therefore face an uphill battle when they allege that they are being treated in a disparate manner compared to other Tennessee voters. And Plaintiffs have not adequately alleged that some Shelby County voters are being treated differently than others.

The Constitution grants states substantial leeway in determining the time, place, and manner of voting. *See* U.S. Const. Art. 1, § 4, cl. 1. In fact, "our constitution also defines the relationship between spheres of government, state and federal, and their responsibilities for protecting the rights of the people." *Ohio Democratic Party*, 834 F.3d at 623. Federal courts therefore should not be quick to interfere with a state's chosen method of voting based only on unsupported allegations of vote manipulation and unreliable technology. The balance of power between the state and federal government "is no less deserving of vigilant respect" than the individual's fundamental right to vote. *Id.* Tennessee has seen fit to allow each county, in accordance with state law, to determine which voting system it will use. Shelby County has decided to use this particular voting system—that does not include a VVPAT. The State of Tennessee has not objected to Shelby County's choice. The law requires stronger evidence than that submitted by Plaintiffs to justify this Court interrupting the constitutionally implemented balance of power.

### D. State Law

Plaintiffs also allege that Shelby County's voting system violates Tennessee constitutional and statutory law. The Court declines to address these issues. That said, it is notable that the Tennessee Court of Appeals has held that the use of DRE voting machines, as opposed to paper ballots, does not violate the Tennessee Constitution. *See Mills v. Shelby Cty. Election Commn.*, 218 S.W.3d 33 (Tenn. App. 2006).

## II. Remaining Injunction Factors

The Court also finds that Plaintiffs have not sufficiently alleged that they will suffer irreparable harm if made to use this voting system in future elections. The county used this

voting system as recently as August 2018,[1] with no showing that they did not function properly. And the burden on Defendants would be substantial if the Court granted Plaintiffs' TRO request. The attorney for Shelby County stated at the TRO hearing that the county has deployed over 200 of these voting machines for early voting, and expect to deploy another 1000 machines on election day, November 6, 2018. Granting the TRO would undoubtedly undermine and significantly burden Defendants' capacity to conduct a smooth election process. Furthermore, while implementing more secure and accurate voting systems always advances the public interest, implementing the requested TRO would interfere with the elections and would harm the public's experience at the polls. The Court finds that under the Rule 65 factors, no factor points to issuance of the TRO here.

## **CONCLUSION**

The Court is sympathetic to Plaintiffs' quest to obtain more secure and accurate voting systems for Shelby County. The security of our election process matters to all citizens of this country. However, it is not the duty of the Court to substitute its judgment for that of state and local officials at the eleventh hour.

Choosing voting systems is a decision mainly reserved for state and local authorities, not the federal courts. This is evidenced in jurisdictions where DRE voting machines have been replaced because of the actions of state election officials[2]—not federal courts.

---

[1] (ECF No. 1 at PageID 50.)

[2] *See*, *e.g.*, Morgan Chalfant, *Virginia Scraps Touchscreen Voting Machines*, The Hill (Sept. 8, 2017, 6:49 PM), https://thehill.com/business-a-lobbying/349896-virginia-scraps-touchscreen-voting-machines; Debra Bowen, *California Decertifies Voting Machines, Conditions Applied for Use*, Government Technology (Aug. 6, 2007), http://www.govtech.com/security/California-Decertifies-Voting-Machines-Conditions-Applied.html.

The Court urges Shelby County voting officials to continue studying the efficacy of the current voting system and to implement better procedures as they become available. But the Court understands that these actions are part of a larger process that should not be disturbed. As a result, the Court DENIES Plaintiffs' Motion for Temporary Restraining Order and Mandamus. (ECF No. 23.)

**SO ORDERED**, this 24th day of October, 2018.

    s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE